Cong Nie, F0497
Banes Horey Nie & Miller, LLC
First Floor, Macaranas Building
4165 Beach Road, Garapan
P.O. Box 501969
Saipan, MP 96950
Tel.: (670) 234-5684
Email: dnie@pacificlawyers.law

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROGELIO A. ALEGRE, | ) CASE NO.: CV-25-00003 |
| Plaintiff, | ) |
| vs. | ) COMPLAINT |
| MICRONESIA RESORT, INC., | ) |
| Defendant. | ) |

COMES NOW Plaintiff Rogelio A. Alegre ("Alegre"), by and through counsel, and for his Complaint, states and alleges as follows:

### Jurisdiction

1. The Court has jurisdiction over Alegre's claim under the Fair Labor Standards Act ("FLSA") pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

2. This Court has supplemental jurisdiction over Alegre's claims under the laws of the Commonwealth of the Northern Marianas Islands ("CNMI") pursuant to 28 U.S.C. § 1367.

### Parties

3. Alegre is an individual residing in Saipan, CNMI.

4. Defendant Micronesia Resort, Inc. ("MRI") is a corporation incorporated under the laws of the CNMI, with its principal place of business located in Saipan, CNMI.

1

**Factual Background**

5. At all times relevant, MRI operated a hotel known as the Kensington Hotel on Saipan.

6. Upon information and belief, at all times relevant, the Kensington Hotel was a for-profit hotel resort that had more than 300 guest rooms, as well as dining, fitness, spa, and amusement facilities.

7. Alegre was an employee of MRI at the Kensington Hotel from around March 16, 2020 to around June 9, 2025.

8. Initially, from around March 16, 2020 to around September 12, 2021, Alegre was employed by MRI with the job title of "Security Guard" at a wage rate of $8.00 per hour.

9. Around September 13, 2021, MRI changed Alegre's job title to "Security Supervisor" and increased his wage rate to $11.00 per hour.

10. Around May 26, 2023, MRI increased his wage rate to $11.55 per hour.

11. Around March 12, 2025, MRI increased Alegre's wage rate to $12.05 per hour.

12. Around May 2025, MRI informed Alegre that it would lay him off.

13. Subsequently, MRI did terminate Alegre's employment.

14. The last day Alegre worked at MRI was June 9, 2025.

15. At all times relevant, regardless of the job title MRI assigned to Alegre, Alegre's primary job duty was that of an ordinary security guard, which was to patrol the premises of the Kensington Hotel, inspect other employees' bags and vehicles, respond to security incidents, investigate suspicious activities, and report to management of MRI regarding security incidents.

16. At all times relevant, a majority of Alegre's work hours were spent on performing the job duty of an ordinary security guard.

17.   At all times relevant, Alegre was never an employee exempt from overtime pay.

18.   During Alegre's employment with MRI, MRI generally compensated Alegre for 40 hours of work each week, without any overtime.

19.   However, Alegre typically worked for more than 40 hours a week.

20.   At all times relevant, MRI's management assigned a regular schedule of 8:00 a.m. to 4:30 p.m. to Alegre.

21.   But MRI's management required Alegre to come earlier than 8:00 a.m. to have a briefing with the outgoing security staff who were about to end their shift.

22.   MRI's management also required Alegre to prepare and submit daily reports after the end of his shift.

23.   Further, MRI's management required Alegre to stay after the end of his shift to perform housekeeping duties, including to do inspection to check for rodents and cats, set up traps, and perform sanitation in restaurants and garbage areas on the premises of the hotel.

24.   As a result, on average, Alegre had to report to work around 15 to 30 minutes before the scheduled beginning of his shift and could not leave until around 20 to 30 minutes after the scheduled end of his shift.

25.   During each work day, MRI allowed Alegre around half an hour's break time during his assigned schedule of 8:00 a.m. to 4:30 p.m.

26.   During such break time, MRI required Alegre to remain on the premises of the Kensington Hotel and be on standby to respond to any security service call or emergency call.

27.   MRI did not count such time as compensable time and never compensated Alegre for such hours.

28.   Outside the assigned schedule of 8:00 a.m. to 4:30 p.m. for 5 days a week, from

3

time to time, MRI's management required Alegre to work, which Alegre complied with, including to patrol the premises of the hotel during nighttime, to assist with events and parties, to cover for security guards who were absent, to perform loading and/or unloading of goods for the NC Picks store in Garapan opened by MRI, and to perform loading and/or unloading of goods for the Kensington hotel.

29. Moreover, MRI required Alegre to attend human resources meetings and work-related training sessions such OSHA training.

30. Some of those meetings and training sessions were outside Alegre's assigned schedule of 8:00 a.m. to 4:30 p.m. for 5 days a week.

31. MRI never compensated Alegre for any of those additional hours described above.

32. During Alegre's employment with MRI, he had at least 5 hours of overtime every week, and in some weeks, the number of overtime hours even exceeded 17 hours per week.

## First Cause of Action

## Violation of the Fair Labor Standards Act ("FLSA")

33. Alegre re-alleges and incorporates all the above paragraphs as if restated in full here.

34. At all times relevant, MRI was covered by FLSA.

35. At all times relevant, MRI had an annual volume of sales or business done of at least $500,000.

36. At all times relevant, MRI had at least two employees who, as part of their employment, used equipment or devices that had moved in interstate commerce before coming to the CNMI, or handled goods that moved in interstate commerce (including without

limitations, imported phones, walkie-talkies, flashlights, and computers and other electronic devices, as well as hotel supplies imported from outside the CNMI).

37. At all times relevant, Alegre was a non-exempt employee covered by FLSA.

38. MRI was required by FLSA to compensate Alegre for the additional hours described above and at an overtime rate equal to 1.5 times Alegre's regular rate.

39. MRI failed to do and thus violated FLSA.

40. MRI's violation of FLSA was willful.

41. MRI knew that Alegre's primary job duty was that of an ordinary security guard and that the additional hours described above were hours worked by Alegre.

42. In not paying Alegre for the additional hours, MRI either intentionally ignore FLSA or willfully disregarded FLSA.

43. As a result of MRI's violation of FLSA, Alegre suffered damages.

### Second Cause of Action

### Violation of the CNMI Minimum Wage and Hour Act ("MWHA")

44. Alegre re-alleges and incorporates all the above paragraphs as if restated in full here.

45. At all times relevant, MRI and Alegre were covered by MWHA.

46. At all times relevant, MWHA required MRI to pay non-exempt employees overtime pay at the rate of 1.5 times their regular rate.

47. At all times relevant, Alegre was never an exempt employee.

48. MRI violated MWHA by not paying Alegre overtime pay required by MWHA.

49. MRI's violation of MWHA was willful.

50. As a result of MRI's violation of MWHA, Alegre suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Alegre prays for relief as follows a judgment for:

a.  Compensatory damages in an amount to be proven at trial;

b.  Liquidated damages under MWHA and FLSA;

c.  Costs of suit (including reasonable attorney's fees, if any); and

d.  Such other and equitable relief as this Court deems just and proper.

Date: June 18, 2025.

                                      Banes Horey Nie & Miller, LLC
*Attorneys for Plaintiff*

                                      By:   */s/ Cong Nie*
                                                    Cong Nie, F0497